[Cite as *State v. Hill*, 2011-Ohio-2523.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.  95379

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES E. HILL

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the

Cuyahoga County Court of Common Pleas
Case No.   CR-534565

**BEFORE:**   Keough, J., Cooney, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   May 26, 2011
**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Matthew Ezzo
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, James E. Hill ("Hill"), appeals his convictions for aggravated burglary, felonious assault, carrying a concealed unloaded weapon, and aggravated menacing. For the reasons that follow, we affirm.

{¶ 2} On March 5, 2010, Hill was charged in Case No. CR-534565 with aggravated burglary, felonious assault, carrying a concealed weapon, aggravated menacing, and intimidation. The aggravated burglary and felonious assault charges each contained one- and three-year firearm specifications. On March 10, 2010, Hill was charged in Case No. CR-534825 with assault. These two cases were joined for a jury trial, where the following evidence was presented.[1]

{¶ 3} In the early morning hours of February 24, 2010, Hill came to the Parma home of the victim, Amanda Manns ("Manns"), to talk to the mother of his child, Bridget Valenta ("Valenta"), who was visiting Manns. According to both Valenta and Manns, when Hill arrived at the residence, he was angry and began loudly banging on the door. Valenta allowed him into Manns's residence to calm him down and avoid waking up the children inside the residence and the neighbors. Once inside the apartment, Hill continued yelling at Valenta as she attempted to calm him down. Manns approached

---

[1] Hill only filed a Notice of Appeal in CR-534565. Therefore, any challenge to his conviction in CR-534825 will not be addressed.

Hill and told him that if he did not calm down, she was going to call the police. According to Valenta, when Manns grabbed at Hill, he became angry, removed a gun from his waistband, put it to Manns's head, and threatened to kill her if she called the police. Hill then turned back towards Valenta as Manns walked away to get her children. Manns then went upstairs to her neighbor's apartment and called the police. Hill left the scene with his brother. Valenta testified that the entire incident happened very quickly: "He was there, he was in the house, he was out the door within 60 seconds."

{¶ 4} Before the police arrived, Valenta left Manns's apartment and went to her home in Berea, where she found Hill in her laundry room. Hill was detained by Berea police and later transported to the Cuyahoga County jail by Parma police. Parma police detective Marty Compton testified that no gun was recovered.

{¶ 5} Later that day, while Hill was incarcerated at the Cuyahoga County jail, he approached corrections officer John Parsley and demanded to see a supervisor regarding his broken hand. According to Parsley, Hill then became belligerent and started getting loud. Parsley stood at his desk and repeatedly ordered Hill to step back; however, Hill refused and became more agitated and aggressive. As Hill aggressively approached, Parsley pushed him away. Hill then charged at Parsley, tackled him to the floor, and

repeatedly punched him in the head.   Parsley sustained injuries to his head and knee.

**{¶ 6}** The jury found Hill guilty of aggravated burglary, felonious assault, including both one- and three-year firearm specifications, the lesser offense of carrying a concealed unloaded weapon, aggravated menacing, and assault.   Hill was sentenced to a total prison term of six years.

**{¶ 7}** Hill appeals, raising four assignments of error, which will be addressed together where appropriate.

<u>Joinder of Indictments</u>

**{¶ 8}** In his first assignment of error, Hill contends that the trial court erred in granting the State's motion to join the indictments.

**{¶ 9}** In order to properly preserve this issue for appeal, the defendant must object to the joinder of indictments at the time of trial, and at the close of the State's case or at the close of evidence. *State v. Owens* (1975), 51 Ohio App.2d 132, 366 N.E.2d 1367, paragraph two of the syllabus.   Failure to object and renew the objection waives all but plain error.   *State v. Harris-Powers*, Cuyahoga App. No. 87921, 2007-Ohio-389, _17.   An error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise.   Id. at _22, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.   "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

{¶ 10} In this case, Hill objected to joinder of the indictments prior to the presentation of evidence, but failed to renew his objection at the close of the State's case, which was the close of all evidence. Accordingly, he has waived all but plain error.

{¶ 11} As a procedural matter, the record is devoid of any motion by the State requesting that Hill's indictments be joined for one trial. We glean from the record that the trial court sua sponte joined these indictments for trial. Under Crim.R. 13(A), a trial court may join the indictments sua sponte if the charges could have been joined under Crim.R. 8(A). *State v. Moore* (Jan. 31, 1994), Madison App. No. CA92-12-034; *State v. VanHorn* (Mar. 3, 2000), Lucas App. No. L-98-1171.

{¶ 12} The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged "are of the same or similar character." *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, citing *State v. Torres* (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288. Separate criminal charges joined pursuant to Crim.R. 8(A) need not be identical, but must be of the "same or similar character." *Moore*, supra. Thus, Crim.R. 13 permits a trial court to "order two or more indictments to be tried together if the offenses could have been joined in a single indictment[.]"

{¶ 13} Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka* (1995), 101 Ohio App.3d 564, 577-578, 656 N.E.2d 9. However, Crim.R. 14 requires separate trials if it appears that a criminal defendant would be prejudiced by such joinder. The defendant bears the burden of demonstrating both prejudice and that the trial court abused its discretion in denying severance of the indictments. *State v. Kirk*, Cuyahoga App. Nos. 95260 and 95261, 2011-Ohio-1687, _31, citing *State v. Coley*, 93 Ohio St.3d 253, 2001-Ohio-1340, 754 N.E.2d 1129.

{¶ 14} We find joinder was proper under Crim.R. 8(A) and Crim.R. 13. The record indicates the crimes were committed on the same day and were of the same or similar character. Hill arrived at Manns's apartment in a highly agitated state. When he entered the apartment, he continued yelling at Valenta. When Valenta was unable to calm him down, Manns intervened by stating that if he did not calm down, she would call the police. At that point, Hill put a gun to Manns's head and threatened her.

{¶ 15} Later that day, Hill approached corrections officer Parsley and demanded to see a supervisor. Hill then became belligerent and started yelling. After Parsley repeatedly told Hill to step away from the desk, Hill became more agitated and aggressively approached Parsley. Parsley was able to push Hill back, but Hill charged at Parsley and knocked him to the

floor and then repeatedly punched Parsley in the head. Applying Crim.R. 8(A), we conclude that the joinder was proper because the criminal offenses were of the same or similar character: Hill resorted to violence when someone tried to intervene or calm him down when he was in an agitated state.

{¶ 16} Hill contends on appeal that he was prejudiced by joining the two indictments because the "two incidents had nothing in common and the joinder served only to inflame the jurors [sic] passion by suggesting that [he] had a violent temper." He further asserts that the evidence relating to each offense would not have been admissible in the other case under Evid.R. 404(B) if the indictments had proceeded to separate trials.

{¶ 17} "A prosecutor can use two methods to negate such claims of prejudice." *Lott* at 163. Under the first method, the "other acts" test, the prosecutor may argue that he could have introduced evidence of the other crime under the "other acts" portion of Evid.R. 404(B) if the other offense had been severed for trial. Id. Under the second method, the "joinder" test, the prosecutor is not required to meet the stricter "other acts" admissibility test, but merely is required to show that evidence of each crime joined at trial is simple and direct. Id. "[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." Id.

**{¶ 18}** We find that the joinder did not prejudice Hill because under the "joinder test" the evidence of each event was simple and direct. Each victim and corroborating witnesses gave straightforward testimony. See *Kirk* at _40. Therefore, the trier of fact was capable of segregating the proof required for each offense. See *State v. Mills* (1992), 62 Ohio St.3d 357, 362, 582 N.E.2d 972.

**{¶ 19}** Accordingly, we do not find plain error with the trial court's decision to join these two indictments for trial. Hill's first assignment of error is overruled.

<u>Sufficiency and Manifest Weight of the Evidence</u>

**{¶ 20}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, Cuyahoga App. No. 92266, 2009-Ohio-3598, ¶12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 942, paragraph two of the syllabus.

**{¶ 21}** A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its

way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Id. at 388.

{¶ 22} In his second and third assignments of error, Hill contends that his convictions for aggravated burglary, felonious assault, and the corresponding firearm specifications were not supported by sufficient evidence and were against the manifest weight of the evidence.[2]

{¶ 23} Under R.C. 2911.11(A)(2), regarding aggravated burglary, "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person * * * is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 24} Hill asserts that the State failed to establish the element of trespass because he had permission to be in Manns's apartment and even if that permission was revoked, he did not remain on the premises, but left Manns's apartment immediately after the confrontation.

---

[2]Hill makes no argument challenging his convictions for carrying a concealed unloaded weapon and aggravated menacing. Therefore, we will not address those convictions in this

{¶ 25} "Trespass" is knowingly entering or remaining on the land or premises of another without privilege to do so. R.C. 2911.21(A)(1). Although a person may have permission to enter the premises, permission "can be revoked upon an act of violence against a person who has the authority to revoke the privilege of initial entry." *State v. Steffen* (1987), 31 Ohio St.3d 111, 115, 509 N.E.2d 383. Accordingly, once Hill pointed the gun at Manns's head and threatened her, permission to be in her apartment was implicitly revoked. We make no distinction in duration of time because Hill remained in the apartment for a brief period of time thereafter, possibly seconds. When Hill decided to threaten Manns with a gun, the trespass occurred; neither Manns nor Valenta needed to explicitly revoke his privilege or order him to leave. Therefore, we hold that once an act of violence occurs against a person who has the authority to revoke the privilege of initial entry, the perpetrator's privilege or permission is revoked immediately; no time or duration between the act of violence and when the perpetrator leaves needs to be established.

{¶ 26} Hill further challenges his aggravated burglary conviction by asserting that the State failed to prove the element of intent, such that no evidence existed that he entered the apartment with any purpose of committing a criminal offense. The Ohio Supreme Court has rejected this

assignment of error.

argument, holding that "for purposes of defining the offense of aggravated burglary, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 530, 2000-Ohio-472, 721 N.E.2d 1037. Therefore, even though Hill may not have had any criminal intent when he entered the apartment, his purpose changed when he decided to remove the gun from his waistband, put it to Manns's head, and threaten her. Accordingly, Hill's arguments challenging his aggravated burglary conviction are without merit.

{¶ 27} Hill contends that his felonious assault conviction was also improper because no one was injured. R.C. 2903.11(A)(2), felonious assault, provides that "no person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The Ohio Supreme Court has held that "[t]he act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, at the syllabus. The testimony of Manns and Valenta established that Hill put a gun to Manns's head and threatened her with bodily harm. Manns testified she was scared and feared for her children. This is sufficient to sustain appellant's conviction for felonious assault.

**{¶ 28}** Hill was found to have committed the above offenses with the use of a firearm. He contends there was insufficient evidence to convict him of the firearm specifications, however, because there was no evidence that the gun was operable. Hill also argues that all of his convictions were against the weight of the evidence because (1) no gun was recovered; (2) the State failed to prove that the gun was operable; and (3) Valenta's written statement to police did not mention that Hill used a gun.

**{¶ 29}** The fact that the gun was not recovered was not fatal to the State's case. Both Manns and Valenta testified to seeing Hill with the gun in his hand and described the gun to the jury. Additionally, the jury heard the 911 call made by Manns immediately after the incident wherein she stated that Hill held a gun to her head. Finally, the testimony established that Hill left the scene in a vehicle that traveled from Parma to Berea. The jury could have concluded that the gun was abandoned at any point during that time.

**{¶ 30}** Concerning operability, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). "The [S]tate can prove that the weapon was operable or could readily have been rendered operable at the time of the offense in a variety of ways without admitting the firearm allegedly employed in the crime into evidence." *State v. Gains* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, syllabus.

{¶ 31} In *Thompkins*, supra, the Ohio Supreme Court held in paragraph one of the syllabus, that "the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm" when determining whether a weapon was operable. Since *Thompkins*, this court has routinely found sufficient evidence to support a firearm specification when the defendant brandished a firearm and implicitly threatened to fire it by pointing it at the victim. See *State v. Hayes*, Cuyahoga App. No. 93785, 2010-Ohio-5234; *State v. Brooks*, Cuyahoga App. No. 92389, 2009-Ohio-5559; *State v. Robinson*, Cuyahoga App. No. 80718, 2003-Ohio-156.

{¶ 32} In this case, we do not have an implicit threat; rather, Hill made an explicit threat of violence towards the victim. The State offered sufficient evidence of operability through testimony that Hill pointed the gun at Manns's head and verbally threatened to kill her if she called the police. Manns testified that she believed the gun was real and she was scared for her life. Valenta also testified that she knew the gun was real because, through her 13 to 14 years of knowing Hill, she knew that he had guns.

{¶ 33} Finally, the fact that Valenta did not include in her written statement to police that Hill used a gun in committing the offense was not detrimental to the State's case because Valenta testified that a gun was used. Even if the jury found Valenta's testimony less credible due to the apparent

contradiction, the jury had already heard Manns's testimony and her 911 call that Hill had a gun.

**{¶ 34}** Accordingly, we conclude that the jury did not lose its way in finding Hill guilty of aggravated burglary, felonious assault, and the corresponding firearm specifications and that sufficient evidence was presented to support each conviction. Hill's assignments of error two and three are overruled.

<u>Prosecutorial Misconduct and Ineffective Assistance of Counsel</u>

**{¶ 35}** In his fourth assignment of error, Hill contends that the improper comments made by the prosecutor during closing arguments amounted to prosecutorial misconduct; thus, defense counsel's failure to object to them denied him his constitutional right to effective assistance of counsel.

**{¶ 36}** Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. *State v. Mann* (1993), 93 Ohio App.3d 301, 312, 638 N.E.2d 585. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. *State v. Pate*, Cuyahoga App. No. 95382, 2011-Ohio-1692, _19, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883.

**{¶ 37}** Hill argues that the prosecution committed misconduct during closing arguments by (1) improperly characterizing his conduct as a "violent

rampage," (2) misstating the evidence in his closing argument, and (3) vouching for the credibility of a witness. Hill alleges that the cumulative effect of these comments during closing argument was prejudicial, thus depriving him of a fair trial.

{¶ 38} We note at the outset that defense counsel did not object to these statements and, in turn, has waived the issue on appeal except for plain error. *Pate*, citing *State v. Owens* (1975), 51 Ohio App.2d 132, 146, 366 N.E.2d 1367. As previously discussed, notice of plain error is to be taken with the utmost caution, to prevent a manifest miscarriage of justice, and should be found when, but for the error, the outcome of the trial would have been different. *Long*, supra.

{¶ 39} Hill claims that the prosecutor's comment suggesting that he was on a "violent rampage" on the day of the offenses was an improper comment on "other acts" evidence, in violation of Evid.R. 404(B). Although the prosecutor used this phrase in describing Hill's conduct, we do not find Evid.R. 404(B) an applicable challenge or that the phrase was improper or prejudicial. The jury heard testimony that Hill committed acts of violence against two different victims, at two different locations, on the same day. The prosecutor's characterization was not improperly prejudicial.

{¶ 40} Hill also challenges the prosecutor's comment vouching for the credibility of Valenta, stating that she was telling the truth. Hill fails to cite

in the record where the challenged comment was made; accordingly, we need not address this argument. App.R. 12(A)(2) and 16(A)(7). Nevertheless, we find that the prosecutor's isolated comment was not prejudicial and did not amount to plain error. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Carter*, 89 Ohio St.3d 593, 603 2000-Ohio-172, 734 N.E.2d 345, citing *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. Furthermore, the trial court, prior to the start of closing arguments, instructed the jury that closing arguments are not evidence. It is presumed that the jury followed this instruction.

{¶ 41} Hill's final challenge pertains to the prosecutor's repeated misstatement and mischaracterization of the evidence in his closing argument by asserting to the jury that Manns and Valenta told Hill to leave the apartment. Our review of the record demonstrates that this misstatement was not an isolated comment, but occurred at least eight times during the prosecutor's closing and rebuttal arguments. The evidence clearly showed that neither Manns nor Valenta told Hill to leave the apartment. The prosecution must avoid insinuations and assertions that are calculated to mislead the jury. *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314. But for the overwhelming proof of guilt in this matter,

this repeated mischaracterization would have constituted plain and prejudicial error. We cannot condone this type of trial tactic.

{¶ 42} Nevertheless, we find that the prosecutor's comments, either separately or cumulatively, do not rise to the level of misconduct that would substantively deprive Hill of a fair trial. Having found that the prosecutor's comments did not constitute misconduct, Hill's defense counsel was, therefore, not ineffective for failing to object to them.

{¶ 43} Hill's final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

COLLEEN CONWAY COONEY, P.J., and
SEAN C. GALLAGHER, J., CONCUR