[Cite as *State v. Ferren*, 2011-Ohio-3382.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95094**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOEL FERREN

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-528583

**BEFORE:**    Sweeney, P.J., Rocco, J., E. Gallagher, J.

**RELEASED AND JOURNALIZED:**    July 7, 2011

**ATTORNEY FOR APPELLANT**

Russell S. Bensing, Esq.
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Sanjeev Bhasker, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


JAMES J. SWEENEY, P.J.:

{¶ 1} Defendant-appellant, Joel Ferren, ("defendant") appeals from his convictions and sentences following a jury trial in which he was found guilty of fifty one counts of sexual battery, six counts of unlawful sexual conduct with a minor, and carrying a concealed weapon. The court imposed an aggregate sixteen year prison sentence.

{¶ 2} Defendant was a music teacher in Bedford, Ohio. Two of his violin students, L.S. and V.D.,[1] independently made statements to police reporting various incidents that had occurred between each of them and

---

[1] It is the policy of this Court not to identify victims of sexual offenses.

defendant during the course of their respective violin lessons with defendant. The victims do not know each other.

{¶ 3} Defendant was born September 17, 1946. L.S.'s date of birth is October 29, 1982 and V.D.'s date of birth is October 5, 1993. L.S. began lessons with defendant around July of 1995, which ceased when she left for college in 2001. V.D. began her lessons with defendant in the fall of 2005, which continued until March of 2008. V.D. was the first to make a statement to police in March of 2008. Thereafter L.S. learned of V.D.'s allegations against defendant from media coverage, which prompted L.S. to contact the police and provide her statement.

{¶ 4} The grand jury returned a sixty-one count indictment, charging defendant with multiple counts of sexual battery and unlawful sexual conduct with a minor as well as a CCW count. Counts 1 through 53 identified the victim as "Jane Doe #1" which was amended to be L.S. and counts 54 through 60 identified "Jane Doe #2" which was later amended to be V.D.

{¶ 5} The first 53 counts of the indictment set forth the dates of offenses in monthly increments beginning with count 1 being "on or about August 1, 1996 to August 31, 1996" and so forth, ending with count 53 being "on or about October 1, 2000 to October 28, 2000." The sole exceptions being counts 11, 12, 21, and 22; which broke June of 1997 into two separate counts (11 and 12) and also broke March of 1998 into two separate counts (21 and 22). Prior to trial,

count 11 was amended to include all of June 1997 and count 21 was amended to include all of March 1998. Counts 12 and 22 were then dismissed.

{¶ 6} Also prior to trial, counts 55 through 60 were amended to reflect the dates of offense as October 1, 2007 through March 17, 2008 and count 54 was dismissed.

{¶ 7} The defense filed a motion to sever the counts involving L.S. from those involving V.D. and sought an order for separate trials. The state opposed the motion.

{¶ 8} The state filed a bill of particulars on November 13, 2009 and defendant moved for a more specific bill of particulars on November 30, 2009.

{¶ 9} By order dated December 22, 2009, the trial court issued a journal entry granting defendant's motion for a more particular bill of particulars and denied his motion to sever counts. The state provided a supplemental bill of particulars on February 25, 2010.

{¶ 10} At trial, V.D. testified that she began violin lessons with defendant in the fall of 2005 when she was 12 years old. The lessons took place at defendant's studio in Bedford, Ohio. V.D. was home schooled and took lessons on Friday mornings for one hour. V.D.'s family developed a close relationship with defendant and defendant often ate dinner with them. Defendant told them he was 35 years old and a French baron. The family believed he owned a chateau in France and was the heir of a French duchess.

He told them he had a private jet and spent every weekend in France teaching music lessons. Defendant gave the family gifts and they celebrated birthdays together. In the summer of 2007, V.D. told her mother that defendant had kissed her neck. V.D.'s mother found this totally inappropriate and contacted defendant. V.D.'s mother demanded that he never do that again.

{¶ 11} V.D. continued her violin lessons with defendant in 2007. At that time, V.D. began an apprenticeship with defendant in order to learn how to make violins. The apprenticeship took place Mondays through Fridays. The hours varied but V.D. typically returned home between 10 and 11 p.m.

{¶ 12} V.D. testified that approximately two weeks into the apprenticeship defendant began kissing and fondling her. Eventually this lead to V.D. engaging in sexual intercourse with defendant by the end of October 2007. According to V.D. from that point until March 17, 2008, she engaged in sexual intercourse and oral sex with defendant on an average of three times a week. Usually the incidents took place on the air mattress in the studio's back room; however, occasionally they would take place in the front room. Defendant gave V.D. a lavender nightgown that was kept at the studio and which she identified as State's Exhibit 5. Although she wore it on occasion, V.D. said that she usually did not have time to put it on. V.D. said she felt guilty and told defendant she wanted to stop. However, they continued to engage in sexual relations until her parents were told about the

relationship in March of 2008. During this time period, V.D. was 14 years old.

{¶ 13} V.D. gave a statement to police on March 21, 2008. Det. Klubnik obtained a search warrant and seized various items from defendant's music studio, including the lavender lingerie, men's pajamas, lotions, bedding, and Kleenex. Forensic scientists of Ohio's Bureau of Criminal Identification and Investigation ("BCI") testified concerning tests conducted on some of these items. Later, V.D. made a list of all the outfits she remembered wearing on days that she engaged in sexual conduct with the defendant. She recalled that he like certain outfits and she wore certain outfits to please him.

{¶ 14} No semen was found on the men's pajama pants or the lingerie. DNA testing indicated the presence of mixed DNA profile on the lavender lingerie, with the major contributor being consistent with V.D.'s DNA profile and the minor contributor being consistent with defendant's DNA profile.

{¶ 15} The state also presented the testimony of a woman, Maryann, who claimed to be acquainted with defendant. Maryann testified that she met defendant in March of 1995 and the two were intimate for a brief period of time. She claimed that defendant made certain comments to her about his students, including that he would like to get into the pants of a seven or eight year old student but her parents were always present. Defendant also allegedly commented to Maryann that he would really like to feel the breasts

of another student who was 13 or 14 years old. Although Maryann said she found these comments extremely inappropriate and felt very uncomfortable about them, she never reported them to anyone. Further, she initiated contact with defendant in 2005 and "reconnected" with him. Maryann also asked for defendant's help with one of her own students. When she learned of this case through the media, Maryann contacted the police.

{¶ 16} On cross-examination, defense counsel solicited further comments from Maryann to the effect that defendant said he could not wait until the students turned eighteen. All of the alleged comments were made between 1995 and 1997.

{¶ 17} L.S. testified that she met defendant in 1995 when she was in the seventh grade. L.S. kept a diary that included entries between January 28, 1995 to August 1, 1996. L.S. took weekly lessons from defendant and by May of 1996, defendant was telling her that he loved her. On July 4, 1996, defendant proposed marriage to L.S. with an emerald ring. L.S. believed she was engaged to defendant at this point. She was 13 years old. Defendant told her not to tell her parents. Later that month, L.S. was in Europe with her cousins on a school trip and told them about her engagement to defendant. The cousins, in turn, told her parents about it. L.S.'s mother and father both testified that they were flabbergasted and shocked by this information. They contacted defendant who came to their house. They both recalled that

defendant expected the police to be there when he arrived. He apologized and said he had never done anything like that before. Defendant told them he was 27 years old. L.S.'s parents terminated her violin lessons.

{¶ 18} L.S. said she became very upset by her parent's decision because she was in love with the defendant. She pouted around the house and eventually her parents accepted defendant's offer to continue the violin instructions at their home for free. L.S. said she resumed her lessons at her home in Maple Heights in August of 1996. While L.S.'s parents were always home when defendant was there, her parents would not be in the room with them.

{¶ 19} Defendant would tell L.S. to wear certain clothes. On one occasion she was wearing a red kilt skirt and defendant started kissing and hugging her. A sexual relationship developed between them in August of 1996, which included oral sex between them. This occurred at least once in August 1996, and continued at least once a month until she left for college. L.S. said the incidents occurred in her living room and also in her basement. L.S. believed that the defendant was about 27 years old. L.S. turned 18 years old in October of 2000 and defendant was not charged with any offenses against L.S. after that date.

**{¶ 20}** The state presented additional witnesses and defendant called several witnesses, whose testimony will be discussed to the extent necessary to address the issues on appeal.

**{¶ 21}** "I: The trial court erred, to the prejudice of Defendant's rights to due process of law and against double jeopardy, in violation of the 5th and 14th Amendment to the United States Constitution, in denying Defendant's motion to dismiss the indictment and allowing Defendant to be tried under a 'carbon-copy' indictment which failed to allege particularity in the allegations against Defendant."

**{¶ 22}** Defendant maintains that he was deprived of due process with respect to the lack of specificity in the indictment and bill of particulars. In this case, defendant was charged with engaging in multiple counts of sexual battery involving L.S. Each count pertained to a separate month in a specific year. Defendant asserts that the counts pertaining to V.D. did not, however, specify a similar discrete time period because all counts identified the time period as on or about September 15, 2007 to March 17, 2008.

**{¶ 23}** The state indicated in the bill of particulars and supplemental bill of particulars that: (a) counts 1-51 took place at a specific residence in Maple Heights and occurred either on the first floor living room or the downstairs basement; (b) counts 52-53 occurred at defendant's Bedford studio; (c) that counts 1-53 involved oral sex, physically intimate touching and fondling,

sexual conduct and sexual contact but not vaginal intercourse; (d) that the victim in counts 1-53 was a minor at the time of the incidents; (e) counts 54-60 took place at defendant's music studio and involved oral sex, physical intimate touching and fondling, sexual conduct and sexual contact, including vaginal intercourse; (f) the victim in counts 54-60 was a minor at the time of the incidents.

{¶ 24} Defendant maintains that the carbon-copy indictment deprived him of due process rights, including the notice aspect, which he believes was not cured by differentiation at trial. Defendant primarily relies on *Russell v. United States* (1962), 369 U.S. 749, 763-64, 82 S.Ct. 1038, 8 L.Ed.2d 240; *Valentine v. Konteh* (C.A. 6, 2005), 395 F.3d 626, and *State v. Holder*, Cuyahoga App. No. 89709, 2008-Ohio-1271.

{¶ 25} *Russell* requires that an indictment (1) contain the elements of the offense charged, (2) provide the defendant adequate notice of the charges against which he must defend, and (3) provide protection against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense. *Russell*, 369 U.S. at 763-764.

{¶ 26} The distinct due process components involved in examining the sufficiency of an indictment include notice and double jeopardy. The vast majority of cases from our district that have applied *Valentine* have been resolved under a double jeopardy analysis. E.g., *State v. Hilton*, Cuyahoga

App. No. 89220, 2008-Ohio-3010; *State v. Ogle*, Cuyahoga App. No. 87695, 2007-Ohio-5066; *State v. Yaacov*, Cuyahoga App. No. 86674, 2006-Ohio-5321; *State v. Hemphill*, Cuyahoga App. No. 85431, 2005-Ohio-3726. With the exception of this Court's decision in *Holder*, this Court has addressed the notice aspect of due process in terms of a carbon copy indictment and rejected it. See *State v. Thomas*, Cuyahoga App. No. 94492, 2011-Ohio-705, ¶22 ("in cases involving sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged."); *State v. Wilson*, Cuyahoga App. No. 92148, 2010-Ohio-550, appeal not allowed, 125 Ohio St.3d 1450, 2010-Ohio-2510, 927 N.E.2d 1129.

{¶ 27} The Sixth Circuit in *Valentine* expressly rejected the notion that a lack of specificity as to dates and times in an indictment alleging child abuse violated the notice requirements of due process. *Valentine*, 395 F.3d at 632. The Court held, "[c]ertainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved. The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse. Valentine's claims regarding the lack of time-and date-specific counts therefore fail." Id.

{¶ 28} Defendant's argument, which is premised on the date range of the indictment, is not sufficient to establish a deprivation of his due process rights. The state provided defendant with the information it had regarding the time period of the abuse and both victims testified consistently with that information. There is no evidence that the state had any more specific information regarding the time period of abuse than it had provided to defendant.

{¶ 29} To the extent defendant maintains that the state failed to differentiate among the various counts, we disagree. The state provided defendant with notice prior to trial of the types of sexual conduct and contact involved with each victim. The victims testified with specificity, recalling at times, details of what they were wearing when various incidents occurred. The reality of the victims' testimony is that with each girl, defendant engaged in an on-going course of conduct over an extended period of time, rendering them unable to pinpoint exact dates. The girls could not delineate each and every sexual episode they had with the defendant, however, their testimony was specific and established the counts of the indictment. L.S. was certain defendant had engaged in oral sex with her, among other things, at least once a month beginning in August of 1996 until October of 2000 at which time she turned eighteen. Although she testified that the relationship continued thereafter, defendant was not charged with any crimes after she reached the

age of majority. V.D. likewise testified that defendant engaged in sexual intercourse with her beginning in October of 2007, which continued on average three times a week until March 17, 2008.

{¶ 30} In *Holder*, the court determined,

{¶ 31} "The State indicted Holder with five carbon copy rape counts, five carbon copy gross sexual imposition counts, and two carbon copy sexual battery counts. Holder timely raised his objection pursuant to Crim.R. 12(C). However, the prosecutor failed to respond with an amendment to the indictment or a supplemental bill of particulars to differentiate these counts from one another 'such that a court in a second trial would be able to discern whether there had been a previous finding of not guilty as to the alleged act.' Therefore, we find that the indictment was insufficient and the trial court did not err in granting, in part, Holder's motion to dismiss." *Holder*, 2008-Ohio-1271, ¶11.

{¶ 32} The state provided defendant with more specifics of the charges against defendant by way of a supplemental bill of particulars. Defendant was apprised of the location of the incidents, the type of sexual activity involved, and the fact of the victim's minority. This case is distinguishable from *Holder* where this court upheld the trial court's partial dismissal of certain counts of a carbon copy indictment when the state failed to provide any specificity beyond what was contained in the indictment.

{¶ 33} "II: The trial court erred, to the prejudice of Defendant's rights to due process of law, in violation of the 14th Amendment to the United States Constitution, in failing to sever the charges against Defendant."

{¶ 34} Because defendant did not renew his objection to joinder at the close of evidence, he has waived all but plain error. *State v. Hill*, Cuyahoga App. No. 95379, 2011-Ohio-2523, ¶9.

{¶ 35} Pursuant to Crim.R. 8(A):

{¶ 36} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶ 37} A defendant may seek severance of counts but bears the burden of proving prejudice. *Hill*, 2011-Ohio-2523, ¶13, citing, Crim.R. 14.

{¶ 38} The state can counter a claim of prejudice in two ways: (1) the "other acts" test, which compels an Evid.R. 404(B) analysis; or (2) the "joinder test" where the state must merely show that the evidence of each crime is simple and direct. *State v. Franklin* (1991), 62 Ohio St.3d 118, 122, N.E.2d; see, also, *State v. Kirk*, Cuyahoga App. No. 95261, 2011-Ohio-687, ¶40. "[I]f the state can meet the joinder test, it need not meet the stricter 'other acts'

test of Evid.R. 404(B)." *State v. Mills* (1992), 62 Ohio St.3d 357, 362, 582 N.E.2d 972.

{¶ 39} Despite defendant's position to the contrary, we find that the evidence in this case satisfied the joinder test. The test does not depend on the amount of evidence presented as to the joined offenses but instead whether the jury was able to segregate the proof required for each of them.

{¶ 40} A trial court does not abuse its discretion in denying a motion for severance of trials when the state presents evidence that is direct, uncomplicated, and the jury demonstrates its ability to segregate the proof on each charge. *State v. Brooks* (1989), 44 Ohio St.3d 185, 194, 542 N.E.2d 636. The record presents clear and direct evidence as to each separate victim such that the jury was readily able to segregate the proof on each charge.

{¶ 41} This assignment of error is overruled.

{¶ 42} "III: The trial court erred, to the prejudice of Defendant's rights to due process of law, in violation of the 14th Amendment to the United States Constitution in permitting testimony of 'other acts' of the Defendant."

{¶ 43} Evid.R. 404(B) provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶ 44}** Under this assignment of error, defendant challenges the admission of Maryann's testimony concerning certain comments defendant allegedly made about some unidentified minor students sometime between 1995 and 1997. The state first counters that these statements were properly admitted as admissions pursuant to Evid.R. 801(D)(2).

**{¶ 45}** Maryann alleged that defendant told her that he "would like to get into her pants," referring to a seven or eight year old child and that he would "like to really feel her breasts sometime," referring to a teenage student but complained that her parents were always around. These comments, while certainly extremely disturbing, do not appear to be admissions against defendant's interest to the extent they standing alone, prove no criminal act, and they are not correlated to the offenses or victims involved in this case. The statements cannot relate to V.D., who did not know defendant during that time period, nor do they appear to relate to L.S. Therefore, the statements before us are not equivalent to the statements at issue in *State v. Edwards*, Cuyahoga App. No. 81351, 2003-Ohio-998, ¶27, where this court found defendant's statements to the victim's sister discussing whether he had touched the victim's breasts admissible pursuant to Evid.R. 801(D)(2).

**{¶ 46}** The state further alleges the comments were admissible pursuant to Evid.R. 404(B) as evidence of defendant's common scheme or plan. However, Maryann did not testify that defendant had admitted to touching

any of his students, but instead that he desired to do so. While such comments are reprehensible this does not make them admissible, particularly where Evid.R. 404(B) expressly precludes admission of defendant's prior wrongs or acts to prove he acted in conformity therewith.

{¶ 47} In this case, however, any error in the admission of Maryann's testimony was harmless. Even disregarding Maryann's testimony entirely, there is overwhelming evidence of defendant's guilt. *State v. Davis* (1975), 44 Ohio App.2d 335, 345, 338 N.E.2d 793. Therefore, this assignment of error is overruled.

{¶ 48} "IV: The trial court erred, to the prejudice of Defendant's rights to due process of law, to present a defense, and to the effective assistance of counsel, in violation of the 6th and 14th Amendment to the United States Constitution, in limiting the closing argument of the Defendant's counsel."

{¶ 49} Defendant suggests that the record reflects a clear limitation placed on defense counsel's final argument. The record does reflect prompting by the trial court to summarize the argument and that the defense was "getting close to your time." Defense counsel did also say, "I wish I had a lot more time." Notwithstanding, defense counsel never raised an objection based on the alleged limitation of closing arguments. A defendant who fails to object to the limitation of closing arguments waives his or her objection to such limitation for purposes of appeal. *State v. Ferrette* (1982), 18 Ohio St.3d

106, 110, 480 N.E.2d 399. Further, "[t]he trial court in a criminal proceeding may in its discretion limit the duration of closing arguments, as long as such limitation is reasonable under the circumstances." Id., citing, *Weaver v. State* (1874), 24 Ohio St. 584, paragraph one of the syllabus.

{¶ 50} If there was a time limit placed on closing arguments, the duration of which is unknown from this record,[2] it was reasonable under the circumstances. We note while the court may have encouraged both sides during their respective arguments to summarize, neither party objected and in every instance, the speaker continued with argument. This assignment of error is overruled.

{¶ 51} "V: The Trial Court erred in failing to properly impose post-release controls upon the Defendant at sentencing."

{¶ 52} The state concedes that the trial court made no mention of the fact that postrelease control could result in imposition of sanctions amounting to one-half of the prison term originally imposed. Thus, this error is sustained. This matter is remanded for resentencing for the proper imposition of postrelease control. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332; *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920

---

[2]Comments made during the state's closing argument indicate that any time limitation exceeded thirty minutes, wherein the court stated, "to the prosecutor, I just want to also point out we're at about a half-hour period."

N.E.2d 958, paragraph two of the syllabus ("[f]or criminal sentences imposed on and after July 11, 2006, in which a trial court failed to properly impose postrelease control, trial courts shall apply the procedures set forth in R.C. 2929.191."); see, also, *State v. Harris*, Cuyahoga App. No. 95097, 2011-Ohio-1072, ¶13 (remand appropriate where trial court did not advise of the consequences of violating post-release control).

{¶ 53} "VI: The Trial Court erred to the prejudice of Defendant's rights to due process of law, in violation of the 14th Amendment to the United States Constitution, in sentencing Defendant to consecutive terms of imprisonment without making the findings required under Ohio R.C. §2929.14(E)(4)."

{¶ 54} Defendant argues that the United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, effectively overruled *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, and, therefore, re-instated the obligation to make certain statutory findings before imposing consecutive sentences in Ohio. While this appeal was pending, the Ohio Supreme Court rejected this argument in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, paragraph three of the syllabus, ("[t]rial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the

General Assembly enacts new legislation requiring that findings be made.")[3]

Accordingly, this assignment of error is overruled.

Judgment affirmed and this matter is remanded for proper imposition of postrelease control.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR

---

[3]Defendant observes that those provisions were never changed or deleted in any of the post-*Foster* amendments to R.C. 2929.14. The Ohio Supreme Court took this into account when it decided *Hodge.* Id., 2010-Ohio-6320, ¶6 (noting General Assembly is "no longer constrained by *Foster's* holdings * * * and may, if it chooses to do so, respond with enactment of a statutory provision in light of *Ice's* holding.")