[Cite as *State v. Webster*, 2013-Ohio-4142.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO                  :          APPEAL NO. C-120452
                                         TRIAL NO.  B-1103023
    Plaintiff-Appellee,        :
                                           *O P I N I O N.*
  vs.                           :

NATHANIEL WEBSTER, JR.,         :

    Defendant-Appellant.       :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 25, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James Michael Keeling*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michele L. Berry*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**HENDON**, **Presiding Judge.**

{¶1}     Following a jury trial, defendant-appellant Nathaniel Webster was found guilty of four counts of unlawful sexual conduct with a minor for conduct occurring in September, October, November, and December of 2009.  He was sentenced to twelve years' incarceration, fined $40,000 and ordered to pay his victim $3400 in restitution.  For the following reasons, we reverse Webster's conviction on the December 2009 charge, but affirm the trial court's judgment in all other respects.

## Pretrial Matters

{¶2}     Webster, a former National Football League ("NFL") player, was indicted based on allegations that he had had a sexual relationship with Jordyn Jackson in 2009 when Jackson was just 15 years old and Webster was 31 years old. In pertinent part, the indictment alleged that Webster had had vaginal intercourse with Jackson once in September 2009, once in October 2009, once in November 2009, and once in December 2009, and that he knew that Jackson was 15 years old at the time or that he had been reckless in that regard.   The state's bill of particulars stated that, during each of the months listed, Webster had engaged in vaginal intercourse with Jackson at Webster's home or in Webster's car while the car was parked in parking lots near Webster's home.

{¶3}     Webster was also charged with gross sexual imposition and sexual battery. Prior to trial, Webster moved to sever his gross-sexual-imposition charge from the remaining counts on the basis that the "rape shield" law applied only to that count but to none of the others.  Webster argued that, absent severance, he would be unable to introduce evidence pertinent to his defense.  The trial court denied the motion and all the charges were tried together.

**The State's Case at Trial**

{¶4} In 2009, Jackson and Webster lived in the same neighborhood only a few houses away from each other. Jackson was a 15-year-old high school sophomore. She lived with her parents and siblings. Webster was married and had several children. According to Jackson, she began babysitting for Webster's family in 2009, and a sexual relationship soon ensued. Webster admitted to police that he had had a sexual relationship with Jackson. The main issue at trial was the timing of the alleged sexual activity, and whether it occurred when Jackson was only 15 years old. Webster's mens rea as to Jackson's age was also an issue.

**The September 2009 Charge**

{¶5} In regard to the charge that Webster and Jackson had engaged in sexual intercourse in September 2009, Jackson testified that during that month while she and a friend, Chloe Kelly, were getting ready to go to a high school football game, Webster texted Jackson on her cellular telephone asking to see her. Jackson told Webster that she was at Kelly's house. Webster picked her up there and drove Jackson to his house where, according to Jackson, they engaged in sexual intercourse in his bedroom while Webster's wife was out. Kelly corroborated details of Jackson's testimony regarding the texting and Jackson leaving her house unexpectedly. Kelly also testified that Jackson had told her in the fall of 2009 that Jackson had been having a sexual relationship with Webster.

{¶6} In further support of the September 2009 charge, the state introduced cellular telephone records showing that there were 256 telephone calls and text messages between Jackson's and Webster's telephones that month.

**The October 2009 Charge**

{¶7}   Michelle Jackson, Jackson's mother, testified that she was having a difficult time contacting her daughter on October 30, 2009. Michelle remembered the date clearly because it was the day before her premature newborn baby was coming home from the hospital.  Since Michelle could not find Jackson, she decided to drive around the neighborhood to look for her.  Michelle discovered Jackson and Webster together in Webster's car as Webster was driving into the subdivision where they lived.  At trial, Jackson testified that she had not had sexual intercourse with Webster on the evening that her mother had caught her, but that she had had sexual intercourse with Webster a number of times that month in Webster's house.  Jackson also testified that Webster had told her that he loved her on October 28, 2009. Jackson had marked the date on her calendar.  The calendar was admitted into evidence.

{¶8}   Hue Jackson, Jackson's father, testified that he telephoned Webster about this incident, asking if anything inappropriate was occurring between Webster and Jackson.  During this call, Hue told Webster that Jackson was only 15 years old. Hue explained to the jury that he was sure of the date that he had called Webster because he had been the head coach of the Oakland Raiders at the time, and he remembered that his team was playing the Denver Broncos that Sunday. He was also sure of the timing because his newborn daughter was soon to come home from the hospital.

{¶9}   As further evidence that there was a relationship between Webster and Jackson, the state submitted evidence that Webster and Jackson had had 84 cellular telephone contacts that month.

### The November 2009 Charge

{¶10} After Jackson had been caught with Webster in his car, she had been "grounded." But, according to Jackson, she continued to see Webster two to three times a week during November 2009. Jackson testified that she would tell her mother that she was going jogging in the neighborhood and instead would meet Webster at a predetermined location. Jackson stated that she and Webster had sexual intercourse in his car on these occasions while the car was parked in an apartment building parking lot or in the parking lot of a nearby retirement center. Jackson also testified that, in November 2009, she had a heart with Webster's initial tattooed on her body.

{¶11} Michelle Jackson testified that, in November 2009, she would frequently watch her daughter leave to go jogging in the neighborhood, and at the same time would notice a car leaving Webster's driveway. Michelle was sure that these events occurred in November 2009 because she would watch Jackson from a second floor window as she fed her newborn baby. According to Michelle, her daughter would be gone 30 to 40 minutes at a time on these occasions, and when she returned she did not look as if she had been running.

{¶12} In further support of the November 2009 charge, the state introduced into evidence telephone records showing 125 telephone contacts between Jackson's cellular telephone number and Webster's cellular telephone number during that month.

### The December 2009 Charge

{¶13} In regard to the December 2009 charge, the state introduced records showing 117 telephone contacts between Webster's telephone number and Jackson's

telephone number that month. The state did not present evidence of sexual contact between Jackson and Webster during this month, and Jackson testified that she thought that Webster had left town in December 2009.

### Evidence in Support of all Charges

{¶14} In support of all of the charges, the state played a series of taped conversations between Jackson and Webster that Jackson had secretly recorded at the direction of investigating police officers. In them, Webster references his and Jackson's sexual relationship but is vague as to its timing. In one of the calls, Webster joked with Jackson about how young she was. That call was made in 2011.

{¶15} Finally, the state produced a taped confession in which Webster admitted to detective Brian Pitchford that he and Jackson had had a sexual relationship. Webster stated that he didn't know exactly when the relationship began, but that he remembered Hue Jackson confronting him about being alone with his daughter in Webster's car. Webster implied that he had been sexually involved with Jackson at the time that Hue had called. He also admitted that the relationship may have started in 2009. And he confessed that he and Jackson would text each other to arrange their sexual encounters. Webster further confessed that he didn't know how old Jackson was at the time that he had started a sexual relationship with her. He thought that she may have been "15, 14, 16."

### Webster's Defense

{¶16} At trial, Webster attempted to discredit the state's version of events as it related to the timing of their relationship and also attempted to establish that Jackson appeared to be older than she was.

{¶17} During the cross-examination of the state's witnesses, the defense drew out inconsistencies in some of the testimony, and highlighted Jackson's inability to remember specific dates. The defense also elicited testimony from Jackson suggesting that Pitchford may have coached her as to the timing of her relationship with Webster. And the defense thoroughly questioned Pitchford concerning Webster's confession. Counsel focused on Pitchford's numerous leading questions concerning the dates at issue, pointing out that Webster could not remember specific dates until Pitchford suggested the dates to him.

{¶18} Several witnesses for the defense were called. Webster's brothers-in-law, nicknamed "Redman" and "Bud," were living with Webster in 2009. They testified that they and each of their girlfriends had had almost exclusive use of Webster's cellular telephone during the months in question. Other witnesses for the defense corroborated this testimony, stating that it was difficult to reach Webster on his cellular telephone because he did not answer it. According to Redman and Bud, Jackson sold marijuana to them on a regular basis and the telephone calls and texts between Jackson's cellular telephone and Webster's cellular telephone often concerned a marijuana sale.

{¶19} Witnesses for the defense also testified that Jackson appeared to be older than 15 years old, claiming that Jackson had been driving in the fall of 2009 and that she had been admitted to a night club after showing identification.

{¶20} Webster's wife, Jennifer, testified that Webster was out of town many times throughout the four-month span at issue. Jennifer believed that Webster had been having an affair in June 2010 based on how Webster had been acting at the

time and also based on certain health issues that Jennifer developed in August 2010 that had required a trip to the gynecologist.

## The Specificity and Sufficiency of the State's Case

{¶21} In his first and second assignments of error, Webster claims that the state failed to distinguish specific instances of sexual conduct in its indictment and bill of particulars, and during trial. This lack of specificity, according to Webster, hampered his ability to present a defense in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Webster further claims that the state's lack of specificity during trial necessarily resulted in a failure of proof and that his convictions are therefore not supported by sufficient evidence.

{¶22} Webster cites *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), and *State v. Hemphill*, 8th Dist. Cuyahoga No. 85431, 2005-Ohio-3726, in support of his argument that the state's case lacked the requisite level of specificity to sustain his convictions. Both cases are distinguishable from the present one.

### *Valentine* and *Hemphill*

{¶23} Defendant Michael Valentine was accused of sexually abusing his step-daughter. The state charged him with 20 counts of child rape and 20 counts of felonious sexual penetration of a minor. The state alleged that all of the counts occurred over the same ten-month period. Each rape count in the indictment contained identical language from the Ohio Revised Code, as did each sexual penetration count. The state's bill of particulars alleged that each crime had occurred in the family home. The Sixth Circuit Court of Appeals determined that the fatal flaw in the state's case against Valentine was that, in its indictment and in its evidence presented at trial, "the prosecution did not attempt to lay out the factual bases of forty

8

separate incidents that took place." *Valentine* at 633. The only evidence presented concerning the number of sexual encounters between Valentine and his victim came from the victim herself, who described what a typical abusive encounter consisted of and then estimated the number of time the behavior had occurred. *Id.* at 632-633. The court determined that "[g]iven the way that Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own." *Id.* at 633. As a result, Valentine was tried and convicted in an "all or nothing" fashion. *Id.* at 634.

{¶24} In *Hemphill*, the defendant had been indicted for 99 sexually oriented offenses. The indictment essentially alleged three types of sexual crimes occurring over varying timeframes. Hemphill was convicted of 22 counts each of rape and gross sexual imposition with sexually violent predator specifications, 7 counts each of rape and gross sexual imposition without specifications, and 29 counts of kidnapping with sexual motivation specifications. Relying on *Valentine*, the Eight Appellate District held that the state had failed to adequately differentiate these counts and, with three exceptions, failed to subject each count to individual proof. The court found that for the vast majority of the charges, Hemphill had, like Valentine, been convicted based on a generic description of sexual acts combined with a numerical estimate of how many times the act had occurred. *Hemphill* at ¶ 88-92.

{¶25} In the present case, the state's indictment and bill of particulars sufficiently differentiated among the counts charged. The state, as is permissible, used the same language in each of its counts of sexual conduct with a minor. But it distinguished the charges by narrowing the time frame of each. And Webster was given notice in the bill of particulars that the state was alleging that vaginal intercourse between Webster and Jackson took place in Webster's home and in his car while his car

was parked in parking lots close to his home. Alleging one count a month of sexual conduct with a minor and describing the sexual act and the place where it occurred is a far cry from the indictments in *Hemphill* and *Valentine* that alleged dozens of identical crimes without significantly further distinguishing factors. *See State v. Ferren* 8th Dist. Cuyahoga No. 95094, 2011-Ohio-3382, ¶ 32.

{¶26} As to the evidence presented at trial, the state did not try Webster in an "all or nothing" fashion. Unlike the victims in *Hemphill* and *Valentine*, Jackson did not merely generically describe a sexual act and estimate the number of times that the act occurred. Instead, the state presented evidence that tied each count to the relevant time frame through Jackson's testimony, her mother's and father's testimony, Chloe Kelly's testimony, telephone records, and Webster's confession. This allowed Webster the chance to defend against each count separately. And it allowed the jury to contemplate each count separately.

{¶27} We therefore hold that *Valentine* and *Hemphill* are distinguishable from the present case and that Webster's argument has no merit.

### Sufficiency of the Evidence

{¶28} Webster's argument that there was insufficient evidence to sustain his convictions has some merit. Our standard of review when addressing the sufficiency of the evidence is whether, after viewing the evidence presented in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime charged beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶29} The crime of unlawful sexual conduct with a minor is defined in R.C. 2907.04(A). That code section states that "[n]o person who is eighteen years of age or

10

older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

{¶30} As detailed above, Jackson testified that in September 2009, October 2009 and November 2009 she and Webster had engaged in vaginal intercourse. The state tied each charge to the relevant time frame though Jackson's testimony, through the corroborating testimony of Chole Kelly, Michelle and Hue Jackson, and through Webster's confession and cellular telephone records. We hold that this evidence was sufficient and specific enough to sustain Webster's convictions for the charges tied to September, October, and November 2009.

{¶31} We do, however, find a lack of proof in regard to the December 2009 charge. The state presented no evidence that any sexual contact occurred between Jackson and Webster during that month. The only evidence presented were phone records showing that contact between Jackson and Webster had continued through December 2009. This was not sufficient to prove a charge under R.C. 2907.04(A). We therefore reverse Webster's conviction for count seven in his indictment that alleged a violation of R.C. 2907.04(A) occurring in December 2009.

{¶32} Webster's first assignment of error is overruled. His second assignment of error is affirmed in part and overruled in part.

**Testimony About Jackson's Credibility**

{¶33} In his third assignment of error, Webster claims that plain error occurred when detective Pitchford offered his opinion as to Jackson's credibility. Webster alternatively argues that counsel was ineffective for failing to object to this testimony.

11

**{¶34}** Webster takes issue with the following exchange between the assistant prosecuting attorney and Pitchford during re-direct examination:

Q. Now, Detective, Ms. Donovan [defense counsel] asked you whether you believed Miss Jackson.

A. Yes.

Q. And do you believe that she was having sexual intercourse with Nate Webster when she was 16 years old?

A. Yes.

Q. And do you believe that she was having sexual intercourse with him when she was 15 years old?

A. Yes.

Q. And do you believe possibly she was even having sexual intercourse shortly after she turned 17 years old in February 2011?

A. Yes.

**{¶35}** Citing *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), Webster claims that Pitchford's testimony deprived him of a fair trial and that his convictions must be reversed. In *Boston*, the Court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus.

**{¶36}** *Boston* is not directly on point since Pitchford was not testifying as an expert. However, in *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 122, the Ohio Supreme Court ruled that a police officer's opinion that an accused is being untruthful is inadmissible.

**{¶37}** If we were to review the cited exchange in a vacuum, based on *Davis* Webster's argument might have merit. Webster, however, opened the door to this testimony and we find no error.

**{¶38}** On cross-examination, defense counsel asked Pitchford numerous questions concerning Jackson's credibility as it related to the pending charges. Counsel asked Pitchford (1) whether he believed Jackson when she told him that she had babysat for the Websters numerous times (Webster's and Jackson's relationship allegedly started when Jackson started babysitting), (2) whether Jackson's story concerning her first sexual encounter with Webster "made any sense" to Pitchford, (3) whether Pitchford was aware that Jackson's father had called Jackson a "liar" when she first told him of her sexual relationship with Webster, (4) whether Pitchford believed one of two conflicting stories Jackson had told concerning whether her mother or Webster had gone with her to purchase a new cellular telephone that enabled her to stay in contact with Webster, and (5) whether Pitchford was aware that Jackson's former boyfriend thought that Jackson had been lying about some of her allegations against Webster.

**{¶39}** Unlike in *Davis* and in *Boston*, where the state had offered testimony concerning the victim's truthfulness during its case-in-chief, here the state was rebutting the defendant's attempt to establish that Jackson had lied about multiple aspects of the pending charges. It is well-settled that a prosecutor can respond to issues raised by an accused. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 101; *see State v. Kelly,* 9th Dist. Summit No. 24660, 2011-Ohio-4999; *State v. Irwin*, 7th Dist., Columbiana No. 11-CO-6, 2012 Ohio 2704, ¶ 22.

**{¶40}** In sum, a defendant cannot fairly expect the state to ignore a line of attack on a victim's veracity as it relates to the pending charges. The prosecution was well within its bounds to ask questions that directly countered the defendant's stringent cross-examination of Pitchford. We therefore hold that no error occurred. And since there was no error, counsel was not ineffective for failing to object. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Webster's third assignment of error is overruled.

**Alleged "Ultimate Issue" and "Specialized Meaning" Testimony**

**{¶41}** In his fourth assignment of error, Webster claims that plain error occurred when Pitchford improperly "asserted his own conclusions" to the jury that Jackson's allegations against Webster constituted the crime of unlawful sexual conduct with a minor. Because there was no objection to this testimony, we review for plain error. Crim.R. 52(B). Plain error does not exist unless, "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1982), paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus. In the alternative, Webster contends that counsel was ineffective for failing to object.

**{¶42}** Pitchford was in the midst of explaining to the jury how he became involved in this case when the following exchange occurred between the assistant prosecuting attorney and Pitchford:

Q. When you interviewed all the people [Hue, Michelle, and Jordyn Jackson] and you determined, I think you told the jury that what she said in terms of the unlawful sex with a minor did violate Ohio law?

A. Yes.

**{¶43}** Based on this exchange, Webster asserts that Pitchford actually testified (1) that sexual intercourse occurred between Jackson and Webster when Jackson was 15 years old, and (2) that Webster had been reckless in regard to Jackson's age. This, according to Webster, violated his "Fifth, Sixth, and Fourteenth Amendment rights to due process, to confront the State's evidence, and [to] a fair trial wherein an impartial jury determines whether the evidence presented proves beyond a reasonable doubt all the essential elements of the crime." Webster also claims that Pitchford's testimony contained "impermissible legal conclusions pertaining to terms that have specialized meanings within the statute defining the offense in question." *See U.S. v. Nixon*, 694 F.3d 623 (6th Cir.2012).

**{¶44}** We are not convinced that Webster's characterization of the cited question and answer is entirely accurate. Pitchford testified after Jackson had testified. During defense counsel's cross-examination of Jackson, the defense attempted to establish that the police had coached Jackson in regard to the timing of her relationship with Webster. The passage cited by Webster was a part of a larger exchange during which the state was attempting to establish that Pitchford's investigation into Webster's case had been fair. This testimony was proper. *Cassano*, 96 Ohio St.3d at 101, 772 N.E.2d 81.

**{¶45}** Even if we were to agree with Webster's portrayal of this exchange, we find no grounds for reversal. Webster claims that the error is plain error because "the

combination of Pitchford's and Jordyn's testimony established the entire case against Webster." In this same argument Webster also claims that "the [s]tate's entire case" rested on Jackson's truthfulness. Neither statement is accurate. Chloe Kelly, Hue Jackson, and Michelle Jackson corroborated the timeframes testified to by Jackson. And in his confession, Webster admitted that he had had sexual intercourse with Jackson, possibly in 2009. He also admitted that he and Jackson would text each other to arrange meetings. The state produced telephone records showing contact between Webster's cellular telephone and Jackson's cellular telephone during the months in question. Further, Webster stated in his confession that he didn't know how old Jackson was when they started having sex, stating that she may have been between 14 and 16 years old.

{¶46} Consequently, the state's case was not based solely on Jackson's and/or Pitchford's and Jackson's testimony. With or without the complained-of statement, the prosecution presented more than sufficient evidence to convict Webster of unlawful sexual conduct with a minor. This argument therefore has no merit. And we also find no ineffective assistance of counsel for counsel's failure to object to Pitchford's testimony. *See Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373. Webster's fourth assignment of error is overruled.

**The Rape Shield Law**

{¶47} In his fifth assignment of error, Webster alleges that the trial court improperly applied R.C. 2907.05(E), the "rape shield law," in his case.

{¶48} R.C. 2907.05(E) states:

> Evidence of specific instances of the victim's sexual activity,
>
> opinion evidence of the victim's sexual activity, and reputation

evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶49}  Webster claims that the trial court erred when it excluded (1) evidence that Jackson had falsely claimed to have had sexual relationships with other NFL players, (2) evidence that from June 2009 through the summer of 2010, Jackson was having sexual relationships with Redman and Bud, (3) evidence that Jackson infected Redman and Bud with sexually transmitted diseases ("STD"), and (4) evidence that Webster infected his wife with the same STD in the summer of 2010.

{¶50}  We limit our analysis to Webster's second allegation.  There was no proffer to the trial court pertaining to evidence of the spread of an STD.  *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), syllabus. And the trial court allowed Jackson to be cross-examined on the issue of whether she had fabricated stories of sexual relationships with other NFL players.

## Application of the Rape Shield Law

{¶51}  To determine whether the rape shield law was constitutionally applied to exclude evidence that Jackson was having affairs with Redman and Bud, the trial court was required to "balance the state interest which the statute is designed to protect against the probative value of the excluded evidence." *State v. Gardner*, 59 Ohio St.2d 14, 17, 391 N.E.2d 337 (1979).

{**¶52**}  At the outset, Webster argues that the trial court's balancing of whether the proffered evidence should have been admitted was flawed because the court applied a "strict liability" mens rea to the crime of unlawful sexual conduct with a minor. Without knowing the elements of the offense, Webster argues, the court could not have properly determined the probative nature of the proffered evidence.

{**¶53**}  Webster's representation that the trial court applied an incorrect mens rea when ruling is not supported by the record.  First, the court stated that it had read Webster's motion concerning application of the rape shield statute. That motion included the proper elements of unlawful sexual conduct with a minor.  Second, at the hearing on this matter, the court listened to arguments that set forth the proper mens rea and then indicated on the record that the crime of unlawful sexual conduct with a minor carried a mens rea of recklessness concerning the age of the victim.  In this regard, the court stated, "the burden of proof is reckless.  It doesn't have to be knowingly or purposely.  It's a lower standard that the state is held to."  Finally, while ruling on Webster's motion, the court said, "I don't see how [the proffered evidence] is relevant because it's pretty much a strict liability statute on the age thing, if they prove that she was between 13 and 16 when they had sex *and that he was reckless in that regard.*" (Emphasis added.)

{**¶54**}  Given the complete context of this sentence and of the hearing overall, we are convinced that the trial court's misstatement that unlawful sexual conduct with a minor was "pretty much a strict liability statute" was simply that—a misstatement and we find no error.

## Balancing of Interests

{¶55} The rape shield law advances several state interests. First, it guards the alleged victim's sexual privacy and protects her or him from undue harassment, thereby discouraging the tendency to try the victim rather than the defendant. *Gardner*, 59 Ohio St.2d at 17, 391 N.E.3d 337. Second, the the rape shield law may encourage the reporting of rape, thus aiding crime prevention. *Id.* Third, "by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process." *Id.* at 17-18.

{¶56} Webster contends that the trial court did not properly weigh the probative nature of the proffered evidence against these state interests. "The key to assessing the probative value of the excluded evidence is its relevancy to the matters as proof of which it is offered." *Id.* at 18. Webster claims the proffered evidence would have explained the multiple phone contacts between his cellular telephone number and Jackson's. We acknowledge that the cellular telephone calls and texts were relevant to the state's case. But evidence of sexual relationships between Jackson and Redman and Jackson and Bud was unnecessary to establish that Jackson had called Webster's telephone number in order to speak to other people. In fact, Redman and Bud both testified at trial that the cellular telephone records admitted by the state reflected contact between each of them and Jackson. Other witnesses for the defense corroborated this testimony. And during his confession to police, Webster stated that Jackson had called his number to speak with either Redman or Bud because she and one of them "had a connection."

{¶57} Webster next claims that evidence that Jackson was in sexual relationships with other men would have aided his case in regard to his mens rea.

Webster argues that if the jury knew that Jackson was having sexual intercourse with Redman and Bud, who were in their late teens and early twenties, the jury could have inferred that Webster must have thought that Jackson was in her late teens or early twenties. We find this argument to be highly speculative and the evidence of little probative value.

{¶58} Overall, we hold that the trial court properly weighed the state interests that the rape shield law protects with the probative value of the proffered evidence.

## Rape Shield Waiver

{¶59} Webster next claims that the state waived its rape shield protection during trial. The state asked Jackson during direct examination if she had ever engaged in sexual activity with Redman or Bud. Jackson replied that she had not. Jackson also testified on direct examination that the only person that she had been sexually involved with in Webster's home was Webster. Webster now argues that, given this line of questioning, Webster should have been able to question Redman and Bud about this alleged relationship.

{¶60} Trial counsel did not raise this exact objection on at trial. The defense instead argued that parts of Webster's redacted confession concerning Jackson's alleged relationships should have been played for the jury. The trial court overruled this objection.

{¶61} In regard to the present argument, we hold that there was no plain error given that this evidence was of minimal probative value. *Long*, 53 Ohio St.3d 91, 372 N.E.2d 804 at paragraphs two and three of the syllabus.

**Severence**

{¶62} In his final argument in this assignment of error, Webster claims the trial court abused its discretion when it did not grant his motion to sever the gross sexual imposition count from the remaining charges. The gross sexual imposition charge is the only charge to which the rape shield law had attached. Webster cites no case law in support of this argument nor does he cite to alleged error in the record. It is not this court's job to ferret out the basis for this claim. App.R. 12; App.R. 16; *Halliday v. Halliday*, 8th Dist. Cuyahoga No. 92116, 2010-Ohio-2597, ¶ 17.

{¶63} Webster's fifth assignment of error is overruled.

## Statement Against Interest

{¶64} In his sixth assignment of error, Webster claims that the trial court erred when it ruled that defense witnesses Maurice Anderson and Jennifer Webster could not testify that Webster had told each of them that he had had a sexual relationship with Jackson in June 2010. In the alternative, Webster argues that counsel was ineffective for failing to properly object to the court's ruling. There is no proffer in the record concerning Jennifer Webster's testimony. We therefore confine our analysis to Anderson's. *See Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500, at syllabus.

{¶65} Defense counsel proffered that Anderson would have testified that Webster had admitted to him that Webster had had sexual intercourse with Jackson at a time when Jackson was 16 years old. Webster claims that Anderson's testimony was crucial to his defense because it established that he was having a sexual relationship with Jackson after Jackson had turned 16. We review this assignment of error for an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).

{¶66} Webster contends that the trial court improperly applied Evid.R. 804(B)(3) when it determined that his statement to Anderson was inadmissible. Evid.R. 804(B)(3) provides that a statement against interest may be admitted under certain circumstances as an exception to the hearsay rule. But Evid.R. 804(B)(3) does not apply to statements made by a party to the action. 1993 Staff Note to Evid.R. 804(B)(3). A statement made by a defendant is considered an "admission," and is governed by Evid.R. 801(D)(2). An "admission" and a "statement against interest" reflect two distinct concepts and different rules of admissibility apply to each. *See Ferrebee v. Boggs*, 24 Ohio App.2d 18, 263 N.E.2d 574 (4th Dist.1970). In pertinent part, Evid.R. 801(D)(2) provides that the statement sought to be admitted at trial must be offered against the party who had made the statement.

{¶67} Here, Webster was attempting to introduce evidence that he had had a sexual relationship with Jackson in 2010—after Jackson had turned 16 years of age. The trial court properly determined that this statement was beneficial to Webster and therefore not admissible. We find no error and no ineffective assistance of counsel. Webster's sixth assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶68} In his seventh assignment of error, Webster claims that he was convicted of the November 2009 charge due to trial counsel's errors.

{¶69} To establish a claim for ineffective assistance of counsel, Webster must show that his attorney's performance was deficient and that "but for" the deficiency, there is a reasonable probability that the outcome of his trial would have been otherwise. *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶70}** Webster asserts that counsel failed to object to a leading question concerning whether Jackson had had sexual intercourse with Webster in November 2009. He also asserts that counsel led Jackson to repeat the November 2009 timeframe on cross-examination. According to Webster, without these alleged errors, there was no evidence that he had had sexual intercourse with Jackson in November 2009.

**{¶71}** Webster takes issue with this question:

And then in November 2009, you said that you continued to see

the defendant maybe two to three times a week. How would you

get out of the house to go see the defendant?

**{¶72}** Prior to posing this question, the assistant prosecuting attorney had already established that he was asking Jackson questions concerning the timeframe of October to November 2009. Also prior to posing this question, Jackson had testified that she had been having sexual intercourse with Webster two to three times a week before she had been caught by her mother in Webster's car, and that she had continued to see him with the same frequency after she had been caught and "grounded." And Michelle Jackson had already testified that she had discovered Webster and Jackson together on October 30, 2009. Hue Jackson had corroborated Michelle's testimony. Consequently, the November 2009 timeframe had been established by Jackson and by her parents before this question had been posed. The "leading" part of this question was permissible under Evid.R. 611(C) as a means to aid the jury in understanding that the state was asking how Jackson managed to see Webster after she had been "grounded." *See State v. D'Ambrosio*, 67 Ohio St.3d 185, 190, 616 N.E.2d 909 (1983).

This single question did not establish the November 2009 timeframe as asserted by Webster. And counsel's performance was not deficient for failing to object.

{¶73} Nor was counsel's performance deficient when she "led" Jackson to repeat the November 2009 timeframe on cross-examination. Each of Webster's charges was tied to a specific month. The state had presented evidence that Webster and Jackson had engaged in sexual conduct in November 2009. Defense counsel's questions concerning November 2009 attempted to discredit Jackson's version of events. This was sound trial strategy and therefore does not constitute ineffective assistance of counsel.

{¶74} Webster's seventh assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶75} In his eighth assignment of error, Webster contends that his convictions were against the manifest weight of the evidence. Since we have already determined that the December 2009 charge is not supported by sufficient evidence, we confine our analysis to Webster's convictions for conduct occurring in September, October, and November 2009.

{¶76} While Webster cites the proper standard for our review of this assignment of error, the bulk of his argument attacks the sufficiency of the state's case. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), syllabus. A sufficiency of the evidence inquiry requires the court to determine whether the state presented enough evidence to support a conviction. It tests the adequacy of the state's case. *Id.* at 386. In contrast, a weight of the evidence inquiry is much broader. It requires this court to weigh the evidence and all reasonable

inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶77} Webster asserts that the state presented no evidence that sexual conduct occurred between Jackson and Webster in October, November, or December 2009. This is a sufficiency argument. We addressed the sufficiency of the state's evidence in the second assignment of error. Next Webster argues that the jury "lost its way" because it was faced with the choice to convict on all counts or to acquit on all counts. We addressed Webster's "all or nothing" argument in the first assignment of error and found it to be lacking.

{¶78} Webster next argues that the jury's weighing of the evidence was tainted by Pitchford's vouching for Jackson's truthfulness. We have already addressed this argument, as well, and determined that Pitchford's testimony was properly before the jury.

{¶79} To the extent that Webster contends that the jury should not have believed the state's version of events, we find no indication that the jury "lost its way" in weighing the evidence presented.

{¶80} Webster's eighth assignment of error is overruled.

**Cumulative Error**

{¶81} In his ninth assignment of error, Webster contends that the cumulative effect of the errors in this case deprived him of a fair trial. The cumulative error doctrine provides that multiple instances of harmless error, while not individually prejudicial, may have the cumulative effect of depriving a defendant of a fair trial. *State*

*v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). Here, Webster contends that various combinations of errors in assignments of error one through seven mandate a reversal of his convictions. We have determined that no error occurred, harmless or otherwise, in the vast majority of these assignments of error. We therefore hold that the cumulative error doctrine does not apply. Webster's ninth assignment of error is overruled.

### The Restitution Order

{¶82} In his tenth assignment of error, Webster claims that the trial court's restitution order was not authorized by law and therefore must be reversed. This argument has no merit.

{¶83} The trial court ordered Webster to pay $3400 in restitution to Jackson to reimburse her for counseling expenses that were incurred in connection with Webster's crimes. Webster claims that this order was contrary to law. He cites R.C. 2929.11(E) in support of his argument. But that code section was repealed effective July 1, 1996. The applicable code section, R.C. 2929.18(A), allows a trial court to order a defendant to pay restitution "in an amount based on the victim's economic loss." Under R.C. 2929.01(M), "economic loss" includes any medical cost incurred as a result of the commission of the offense at issue. This assignment of error is overruled.

### Webster's Sentence

{¶84} Webster asserts that the trial court abused its discretion when it imposed sentences greater than the minimum term of incarcerations, ordered the sentences to run consecutively, and fined Webster $40,000. Aside from the trial court's sentence on the December 2009 charge, we find no error.

**{¶85}** Our review of the record shows that the trial court's sentences on the September, October, and November 2009 charges were within the range allowed by law, and were not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 14-17; *State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 9 and 27. And the record indicates that the trial court carefully considered the facts of the case before imposing sentence. The trial court's sentences on counts four, five and six (the September, October, and November charges) of Webster's indictment are affirmed.

**{¶86}** Since we have determined that Webster's conviction on count seven of his indictment for sexual conduct with a minor occurring in December 2009 was not supported by sufficient evidence, we reverse the court's twenty-four month sentence on that count.

**{¶87}** Webster's eleventh assignment of error is sustained in part and overruled in part.

**Conclusion**

**{¶88}** There was insufficient evidence to support a conviction for count seven of Webster's indictment, charging him with unlawful sexual conduct with a minor occurring in December 2009. That conviction is reversed. In all other respects, the trial court's judgment is affirmed.

**{¶89}** This case is remanded to trial court to enter judgment vacating Webster's conviction on count seven of his indictment and to adjust his sentence accordingly. We note that this will result in a 24 month reduction in Webster's term of imprisonment.

Judgment affirmed in part, reversed in part, and cause remanded.

**HILDEBRANDT** and **FISCHER, JJ.,** concur.


Please note:

    The court has recorded its own entry on the date of the release of this opinion.