{¶ 1} Defendant-appellant, Lloyd Johnson, appeals his conviction after a jury trial in the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} At approximately 3:30 a.m. on June 27, 2005, James Bryant, a.k.a. "June," was hanging out in the vicinity of Woodside and 128th Streets with a friend named Johnny Pierce. Also present was Marcus Wilkins, a.k.a. "Tree," appellant's cousin and co-defendant in this case. Bryant had set fire to a piece of paper for amusement, and told Wilkins to look at the paper that was on fire. Wilkins asked Bryant, "Why you always messing with me?" Bryant testified that he and Wilkins began arguing, and he noticed that Wilkins smelled of alcohol. Bryant pushed Wilkins, and Wilkins "swung" at him. A fight ensued, and Bryant tripped Wilkins and punched him in the face four or five times. When Bryant began to walk away, he noticed that Carlton Bland, the victim, a.k.a. "C" or "C Muder," was standing nearby.
 {¶ 3} Bryant walked over to the fence pole where the victim and Pierce were standing. Wilkins walked to the corner of 128th
Street and Woodside after trying to get a cell phone from someone. Bryant's girlfriend picked Bryant up, and Bryant tried to get the victim to come with him, but the victim decided to stay. When Bryant was leaving, he heard Wilkins tell the victim, "you pimp players — you know, pimps go get f***ed." Wilkins told Bryant, "I'll get the last laugh." Finally, Bryant testified *Page 4 
that Wilkins did not have a gun, but that Bryant had seen appellant with a .38 caliber revolver on several occasions.
 {¶ 4} Willie Eric Johnson, a.k.a. "Beetle," testified that on July 25, 2005 he was walking down Woodside and saw Wilkins. He testified that Wilkins was agitated and bloody. Beetle asked him what happened, and Wilkins indicated that the victim and Bryant jumped him. Wilkins left.
 {¶ 5} Beetle stayed there with the victim and Oliver Eaton. The three of them smoked cigarettes and talked. Beetle testified that about 20 to 40 minutes later, appellant's blue and white van pulled up and appellant jumped from the van. A fight broke out between appellant and the victim. Beetle testified that the appellant said, "you MF, you beat up my cousin [Wilkins]." Wilkins then jumped from the van and approached the victim and appellant. Appellant told Wilkins to "shoot the mother f***er * * *. Give me the mother f***'n gun. I'll shoot the mother f***er if you ain't going to shoot him."
 {¶ 6} Beetle testified that the altercation lasted about 20 minutes. He testified that he saw Wilkins with a revolver, and he saw the victim get down on his knees, put his hands up, and beg for his life. Beetle testified that when the victim stood up, Wilkins shot him. Beetle said that the victim got up and tried to walk a few steps and then fell again. Beetle testified that the appellant and Wilkins began to flee but then returned and shot the victim two more times. *Page 5 
 {¶ 7} Beetle testified that as appellant and Wilkins were returning to appellant's van, Wilkins pointed the pistol at Beetle and told him to "keep my name out of your b****-a** mouth." Beetle said that after they fled, Beetle tried to resuscitate the victim, but when he saw blood coming from the victim's head, he knew the victim was not going to make it. Beetle testified that he fled because he did not want to get blamed.
 {¶ 8} William Johnson III testified that he has lived at 12805 Woodside for eight years. On July 27, 2005 at approximately 5:00 a.m., he was sleeping in his bedroom on the second floor when he was awakened by yelling. He testified that he went to the window and saw the victim on the fence with his hands in the air. Mr. Johnson testified that he saw appellant hitting the victim, while Wilkins was holding the victim by the neck. Mr. Johnson said he saw that Wilkins had a gun and that it was pointed toward the ground.
 {¶ 9} Mr. Johnson testified that the fight lasted approximately 10 to 15 minutes. When he left the window to turn off his alarm clock, he heard gunshots. Mr. Johnson testified that when he returned to the window, he saw the victim on the ground and appellant and Wilkins running toward his house and getting into a van. Mr. Johnson called 911.
 {¶ 10} Oliver Eaton, a.k.a. "Koolaid," testified that he was with the victim that evening when a van pulled up. Eaton saw appellant and Wilkins exit the van. He *Page 6 
testified that Wilkins had a .38 caliber gun. Eaton said he drove through a yard to get to a pay phone to call 911.
 {¶ 11} Carlos Clark was there that evening and spoke with Bryant, who told him that he had just gotten in a fight with Wilkins. Clark asked Wilkins what was going on, and Wilkins said, "these n***ers trying to play me." He testified that "being played" was a bad thing. Clark left, and when he returned, he saw appellant and the victim fighting. Clark testified that he saw Wilkins exit appellant's van. Clark asked him what was going on, and Wilkins told him to "just go ahead on." Clark testified that Wilkins shot the victim with a ".38." Then he heard Wilkins tell Beetle to keep his mouth shut.
 {¶ 12} Donald Drake, a.k.a. "Dooger," testified that he spoke with the appellant the day after the shooting and asked him what happened. Appellant told Drake: "F*** C." "I told him it was going to happen. I told him, stop playing with us. * * * I told him to stop f***ing — always playing. I told him this was going to happen."
 {¶ 13} All the witnesses knew the defendants and the victim. After the shooting, Wilkins fled to New Jersey and appellant went to North Carolina. When Wilkins returned to Cleveland, he was arrested. Wilkins denied shooting the victim but did admit to fighting with Bryant that evening. He recalled that he was extremely intoxicated after his cousin, appellant's birthday party.
 {¶ 14} Dr. Galita, a Deputy Corner and forensic pathologist, testified that he performed the autopsy of the victim and wrote the report. He testified that the victim *Page 7 
was shot three times. Dr. Galita opined that the order of the gunshot wounds was one in the chest, one in the back, and then one in the head. He testified that the gunshot to the chest was what caused the victim's death.
 {¶ 15} Appellant, his girlfriend Tierra Givhan, and his cousin Chezaley Williams testified on his behalf. Essentially, they each testified that they were on Woodside on the night in question but left before anything happened.
 {¶ 16} Appellant was found guilty of aggravated murder without the firearm specifications. He was sentenced to a term of 20 years to life in prison. Appellant appeals, advancing four assignments of error for our review. Appellant's first assignment of error states the following:
 {¶ 17} "I. Mr. Johnson's conviction for aggravated murder is contrary to the manifest weight of the evidence."
 {¶ 18} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Leonard, 104 Ohio St.3d 54, 682004-Ohio-6235 (internal quotes and citations omitted). *Page 8 
 {¶ 19} Appellant argues that he was not present when Wilkins killed the victim and that the testimony against him was against the manifest weight of the evidence. He contends that the witnesses were unreliable and inconsistent and that the jury clearly lost its way when he was found guilty of aggravated murder in violation of R.C. 2903.01(A).
 {¶ 20} R.C. 2903.01(A) provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." Appellant was convicted because he acted in complicity with the principal offender, Wilkins. In State v. Johnson, 93 Ohio St.3d 240,2001-Ohio-1336, syllabus, the Supreme Court of Ohio held as follows: "[t]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."
 {¶ 21} In this case, Beetle testified that he saw appellant pull up in his blue and white van and jump out. Beetle testified that appellant and the victim started fighting and appellant said, "you MF, you beat up my cousin." Then Wilkins exited the van with a gun. Appellant said to Wilkins, "shoot the mother f***er * * *. Give me the mother f***'n gun. I'll shoot the mother f***er if you ain't going to shoot him." *Page 9 
 {¶ 22} Mr. Johnson testified that he saw appellant hitting the victim, while Wilkins had the victim by the neck and had a gun pointed toward the ground. He testified that the victim was trying to flee but could not get away because appellant was hitting him.
 {¶ 23} Eaton testified that he saw a van pull up and witnessed appellant and Wilkins exit the van. Wilkins had a .38 caliber gun. Finally, Clark testified that he saw appellant and the victim fighting, and then witnessed Wilkins exit the van. He said that Wilkins told him to "just go ahead on." Clark testified that Wilkins then shot the victim.
 {¶ 24} After examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that there is substantial evidence upon which a jury could reasonably conclude that appellant supported, assisted, encouraged, cooperated with, advised, and incited Wilkins into shooting the victim. The jury did not lose its way. Accordingly, appellant's first assignment of error is overruled.
 {¶ 25} "II. Appellant was deprived of his liberty without due process of law, where the evidence failed to demonstrate that he was accountable for aggravated murder."
 {¶ 26} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements *Page 10 
of the crime proven beyond a reasonable doubt.'" State v.Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 27} Appellant argues that there is insufficient evidence to prove "prior calculation and design." Appellant points out that there is no evidence that the victim and appellant had a strained relationship. He maintains that the location of the murder was not planned, and that the killing was instantaneous. Appellant contends that there was no evidence that Wilkins and appellant planned to kill the victim.
 {¶ 28} "`[P]rior calculation and design' is a more stringent element than the `deliberate and premeditated malice' which was required under prior law." State v. Cotton (1978), 56 Ohio St.2d 8, at paragraph one of the syllabus. The Supreme Court of Ohio noted that the General Assembly's apparent intention "was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." Id. at 11. According to the committee comment, "the phrase `prior calculation and design' [was employed] to indicate studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim. Neither the degree of care nor the length of time * * * are critical factors in themselves, but they must amount to more than momentary deliberation." See 1973 Technical Committee Comment to Am. Sub. H.B. No. 511. *Page 11 
Therefore, "instantaneous deliberation is not sufficient to constitute `prior calculation and design.'" Cotton, 56 Ohio St.2d at paragraph two of the syllabus.
 {¶ 29} In State v. Taylor, 78 Ohio St.3d 15, 18-20, 1997-Ohio-243, the Supreme Court of Ohio noted that this court in State v. Jenkins (1976),48 Ohio App.2d 99, 102, found three factors important in determining whether prior calculation and design exists: (1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost instantaneous eruption of events"?
 {¶ 30} In this case, appellant knew the victim for some period of time, and their relationship was strained because appellant and the victim were competing drug dealers in the area. Furthermore, appellant believed the victim was "disrespecting" his family. There was testimony that appellant said to the victim "you MF, you beat up my cousin [Wilkins]." Also, Drake testified that after the murder, appellant told him "f*** `C [the victim]. And I told him it was going to happen. I told him, stop playing with us."
 {¶ 31} Bryant testified that after the first confrontation, he heard Wilkins tell the victim,"you pimp players — you know, pimps go get f***ed." Wilkins also told Bryant, "I'll get the last laugh." Bryant testified that Wilkins did not have a gun, but Bryant *Page 12 
had seen appellant with a .38 caliber revolver on several occasions. Wilkins then went to appellant's house, and they both returned to the area with the gun.
 {¶ 32} After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the victim's murder was planned with prior calculation and design and not a spontaneous eruption of events. Accordingly, appellant's second assignment of error is overruled.
 {¶ 33} "III. The trial court plainly erred when it failed to sever Mr. Johnson's case from that of his co-defendant under Criminal Rule 14 and thereby violated his state and federal constitutional rights to due process and a fair trial."
 {¶ 34} Under this assignment of error, appellant argues that the trial court should have ordered separate trials for appellant and Wilkins. He contends that his trial was tainted by Wilkins's presence and that it was plain error for the trial court to allow the state to try the two together.
 {¶ 35} Since appellant did not file a motion to sever or object prior to trial regarding the joint trial, we review the trial court's action under the plain error standard.
 {¶ 36} "Plain error" exists when it is demonstrated that the outcome of the trial clearly would have been different but for the error.State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We undertake notice of plain error with utmost caution, under exceptional circumstances, and only to prevent a manifest *Page 13 
miscarriage of justice. State v. D'Ambrosio, 67 Ohio St.3d 185, 197,1993-Ohio-170; Long, at paragraph three of the syllabus.
 {¶ 37} Crim.R. 8(B) provides that "two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." Joinder of defendants and the avoidance of multiple trials are favored in the law because it "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Thomas (1980),61 Ohio St.2d 223, 225; State v. Daniels (1993), 92 Ohio App.3d 473, 484.
 {¶ 38} If a defendant is prejudiced by joinder with other defendants at trial, the court shall grant a severance or provide such other relief as justice requires. Crim.R. 14; Thomas, supra, at 226. To prevail on a claim that the trial court erred in denying a motion to sever, the defendant must affirmatively demonstrate (1) that his or her rights were prejudiced; (2) that at the time of the motion to sever, the defendant provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial; and (3) that given the information provided to the court, it abused its discretion in refusing to *Page 14 
separate the charges for trial. State v. Schaim, 65 Ohio St.3d 51, 59,1992-Ohio-31, citing State v. Torres (1981), 66 Ohio St.2d 340, syllabus.
 {¶ 39} Appellant argues that "the lion share of the evidence implicated Wilkins in the shooting," and that Wilkins's involvement and conduct poisoned the jury against appellant. He contends that the jury was unable to separate the two defendants' actions, and thus he was prejudiced. We disagree.
 {¶ 40} As we have stated previously, "Joinder of defendants is the rule rather than the exception." State v. Jordan (Apr. 29, 1999), Cuyahoga App. No. 73453. According to R.C. 2945.13, two or more persons indicted together shall be tried together. Furthermore, joinder of trials will always result, to some extent, in prejudice to a defendant — that assumption is implicit in the rules. State v. Adkins (Nov. 3, 1988), Cuyahoga App. No. 53960.
 {¶ 41} Nevertheless, it is the burden of the defendant to make an affirmative showing that his rights have been prejudiced. Indeed, some courts have found a tendency of some juries in complex trials not to segregate the proof required on each separate offense, but to convict for all crimes on the combined proof offered upon all offenses.State v. Roberts (1980), 62 Ohio St.2d 170, 175. Naturally, such convictions are improper; however, our examination of the record reveals that the nature of the evidence presented at trial was not such that the jury would have encountered difficulty in determining which evidence was applicable to which *Page 15 
defendant. It was not error for the trial court to allow these two defendants to be tried together. Accordingly, appellant's third assignment of error is overruled.
 {¶ 42} "IV. Lloyd Johnson was deprived of his constitutional right to effective assistance of counsel, by trial counsel's failure to request that Mr. Johnson's trial be severed from that of Mr. Wilkins."
 {¶ 43} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102.
 {¶ 44} Appellant argues that his attorney was ineffective because he did not file a motion to sever his trial from the co-defendant's trial. We find appellant's argument to be without merit. As indicated in the previous assignment of error, joinder was proper; therefore, appellant's attorney was not ineffective for failing to file a futile motion. Appellant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, JUDGE
 JAMES J. SWEENEY, P. J., and MARY EILEEN KILBANE, J., CONCUR *Page 1