[Cite as *State v. Patterson*, 2017-Ohio-1444.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104266**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# VAN PATTERSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-595183-A

**BEFORE:** Laster Mays, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** April 20, 2017

-i-

**ATTORNEY FOR APPELLANT**

Erin R. Flanagan
75 Public Square, Suite 1325
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Mary Weston
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Van Patterson ("Patterson"), appeals his convictions and sentence, and asks this court to sustain the assignments of error and remand this case for further proceedings.   We affirm.

{¶2} Patterson was found guilty on four counts of a 13-count indictment.   Those four counts include Count 1, rape, first-degree felony, in violation of R.C. 2907.02(A)(2); Count 3, kidnapping, first-degree felony, in violation of R.C. 2905.01(A)(4); and Counts 9 and 11, rape, first-degree felonies, in violation of R.C. 2907.02(A)(1)(c).   The sexual motivation and sexually violent predator specifications, attached to Counts 9 and 11, were tried to the bench.   Patterson was found to be a Tier III sex offender and sexual predator.   Patterson was sentenced to consecutive 10-year prison sentences each on Counts 1 and 3, and concurrent 10 years to life sentences on Counts 9 and 11 to be served consecutively. Patterson was sentenced to a term of 35 years to life imprisonment with parole eligibility after serving 35 years.

## I.     Facts

{¶3} On December 28, 1995, a 16-year-old girl named T.T. was selling roses and CDs at the M & M Lounge in Cleveland.   As T.T. was leaving work, a man that she recognized from the lounge offered her a ride.   She only knew him by his nickname, "Apples."   Apples drove T.T. to her friend's house, and T.T. stated that when they arrived in the driveway, Apples raped her by force.   After the attack, T.T. ran inside the

house and told her friend, L.H., what happened. T.T. also told her mother, who took T.T. to the hospital, where a rape kit was collected. In court, T.T. identified Patterson as Apples.

{¶4} L.H. testified that when T.T. arrived at her home on that day, L.H. saw T.T. in a vehicle with a man who introduced himself as Apples. After the introduction, L.H. went back into her home. A short time later, T.T. came into the house and told L.H. that Apples raped her. In court, L.H. identified Patterson as Apples.

{¶5} Once T.T. was taken to the hospital, the staff performed a rape kit and examination. T.T. told the hospital staff that she had been raped by a man she did not know, other than his nickname. Detective Laura Parker ("Detective Parker") was assigned to T.T.'s case. Detective Parker testified that she could not locate Apples because T.T. did not know his real name. Detective Parker also testified that she was not aware there was a rape kit because it had not been collected from the hospital. So Detective Parker closed the case. Once the rape kit was discovered in 2013, DNA testing was conducted and the DNA matched the DNA of Patterson.

{¶6} On the evening of February 7, 2009, M.J. testified that she and three other people were at M.J.'s aunt's home, where they consumed a large amount of alcohol, after which the group went to Whitmore's bar and consumed more alcoholic drinks. M.J. estimated that she had two or three drinks at the bar. She testified that she was very intoxicated when she decided to walk back to her aunt's home alone. She remembered getting into a car with a man she did not know. The next thing she remembered was

waking up in an abandoned home.   M.J. walked home and testified that she felt different in her vaginal area so she decided to go to the hospital where she consented to a sexual assault examination.

{¶7} At the hospital, M.J. told the emergency room nurse that she had been sexually assaulted.   The nurse testified that she performed a sexual assault examination and collected samples from M.J. and personally sealed the rape kit.   M.J.'s rape kit was tested by a forensic scientist in 2014.   The DNA from the rape kit matched Patterson's DNA.

{¶8} On April 22, 2015, Patterson was indicted on 13 counts for raping and kidnapping three women, T.T. (1995), M.J. (2009), and A.G. (1997), for which he was found not guilty.   Patterson was found guilty of the rape and kidnapping of T.T. and the rape based on "substantial impairment" of M.J.

{¶9} However, before Patterson's trial commenced, he filed two pretrial motions. He filed a motion to sever the 1995 and 1997 counts from the 2009 counts relating to M.J. He argued that joinder of those counts were prejudicial and would deny him his due process right to a fair trial.   He also filed a motion to dismiss for preindictment delay regarding the rape of T.T. in 1995.   He argued that he was prejudiced by the unavailability of T.T.'s mother, who died before trial.   Patterson argued that T.T.'s mother could have provided exculpatory testimony had the state brought charges against him in a timely manner.   T.T.'s mother called the police after her daughter was attacked and told the police that she believed T.T. was lying about not knowing Patterson and

lying about the attack itself. The trial court denied both motions. Patterson filed this timely appeal and assigns four errors for our review:

    I.     The trial court erred when it denied Patterson's pretrial motion to dismiss Counts 1, 2, and 3 for reasons of preindictment delay;

    II.    The trial court erred when it denied Patterson's pretrial motion to sever the 1995 and 1997 allegations from those arising in 2009;

    III.   The evidence is insufficient to support convictions of rape in Counts 9 and 11; and

    IV.   The trial court erred when it failed to merge Patterson's rape and kidnapping convictions in Counts 1 and 3.

## II. Preindictment Delay

### A. Standard of Review

{¶10} "A trial court's decision on a motion to dismiss for preindictment delay is reviewed de novo as to the legal issues, but the court's findings of fact are afforded great deference." *State v. Richardson*, 8th Dist. Cuyahoga No. 103925, 2016-Ohio-5843, ¶ 7, citing *State v. Dixon*, 2015-Ohio-3144, 40 N.E.3d 601, ¶ 24 (8th Dist.).

**B.    Law and Analysis**

**{¶11}** In Patterson's first assignment of error, he argues that the trial court erred when it denied his pretrial motion to dismiss Counts 1, 2, and 3 for reasons of preindictment delay.

> The statute of limitations for a criminal offense is a defendant's primary protection against overly stale criminal charges.   *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, both the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Ohio Constitution Article I, Section 16, afford limited protection against preindictment delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 97. "Preindictment delay violates due process only when it is unjustifiable and causes actual prejudice."   *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, ¶ 12.

*Richardson* at ¶ 8.

> **{¶12}** However,

> [T]he Ohio Supreme Court has "firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay.   Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 13.   A court must determine whether the defendant has established actual prejudice to his ability to defend himself before independently determining whether the state met its burden of establishing a justifiable reason for the delay in bringing charges.   *See Id.* at ¶ 16-18, 29.   When a defendant fails to establish prejudice, it is unnecessary to consider the reasons for the delay. *See Adams* at ¶ 107.

*Id.* at ¶ 9.

**{¶13}** Patterson has failed to establish that he was prejudiced by the delay.   "In determining actual prejudice, '[a] court must consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'"

*Id.* at ¶ 10, quoting *Jones* at ¶ 20, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. Patterson reasons that because the state delayed in bringing charges against him, a crucial witness to his case died. He claims that T.T.'s mother's testimony could have helped to show that he did not rape T.T. However, he cannot speculate about the extent and effect of her testimony. There is no way of knowing what information would come from T.T.'s mother's testimony or even that it would be exculpatory. T.T.'s mom told the detective that her daughter knew Patterson. T.T. never said that she did not know Patterson; she stated that she was familiar with her rapist as Apples. T.T. did not know the true identity of Patterson, and DNA analysis was not done because the detective was not aware that a rape kit was completed. Therefore, the state was unable to charge Patterson with the rape of T.T. until the DNA from T.T.'s rape kit was located and tested. "A claim of actual prejudice should be scrutinized 'vis-à-vis the particular evidence that was lost or unavailable as a result of the delay' and 'the relevance of the lost evidence and its purported effect on the defense.'" *Id.*, quoting *Jones* at ¶ 23.

{¶14} Patterson's argument that T.T.'s mother could have testified on his behalf is speculative and does not show actual prejudice. "Actual prejudice is not demonstrated by the 'possibility' of faded memories, inaccessible witnesses, and lost evidence, which are inherent in any extended delay and are sufficiently protected against by the statute of limitations." *Id.* at ¶ 11, citing *Jones* at ¶ 21. "[A] defendant cannot rely upon broad assertions of missing evidence or an unavailable witness to establish prejudice. A

defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case." *Id*. at ¶ 13. Patterson does not demonstrate a viable, tangible connection between what T.T.'s mother could testify to and his defense. We find that the trial court did not err in denying Patterson's motion to dismiss for preindictment delay. Patterson's first assignment of error is overruled.

## III. Motion to Sever

### A. Standard of Review

**{¶15}** We review the trial court's denial of a motion to sever for abuse of discretion.

> To prevail on a claim that the trial court erred in denying a motion to sever, the defendant must affirmatively demonstrate (1) that his or her rights were prejudiced; (2) that at the time of the motion to sever, the defendant provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial; and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. *State v. Johnson*, Cuyahoga App. No. 88372, 2007-Ohio-2501, ¶ 38. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

*State v. Huber*, 8th Dist. Cuyahoga No. 94382, 2010-Ohio-5598, ¶ 11.

### B. Law and Analysis

**{¶16}** In Patterson's second assignment of error, he argues that the trial court erred when it denied Patterson's pretrial motion to sever the 1995 and 1997 allegations from those arising in 2009. Crim.R. 8(A) provides that,

> [T]wo or more offenses may be charged in the same indictment if they are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or

constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

*Id.* at ¶ 10.

**{¶17}** Patterson claims that the state's decision to conduct one trial with all three sexual assault allegations prejudiced him.

> If a defendant makes a case for prejudicial joinder, [t]he state may rebut a defendant's claim * * * in two ways. (Citation omitted.) First, if in separate trials the state could introduce evidence of the joined offenses as other acts under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder — the other acts test. (Citation omitted.) Evid.R. 404(B) recognizes that evidence of other crimes may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. If one offense could be introduced under Evid.R. 404(B) at the trial of the other offense, had the offenses been tried separately, any prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials, and a court need not inquire further. (Citation omitted.) Second, the state can refute prejudice by showing that evidence of each crime joined at trial is simple and direct — the joinder test. (Citation omitted.) Where evidence of the joined offenses is uncomplicated, such that the jury is capable of segregating the proof required to prove each offense, a defendant is not prejudiced by joinder. (Citation omitted.) A trier of fact is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated.); *State v. Ferren*, 8th Dist. Cuyahoga No. 95094, 2011-Ohio-3382, ¶ 40 ( A trial court does not abuse its discretion in denying a motion for severance of trials when the state presents evidence that is direct, uncomplicated, and the jury demonstrates its ability to segregate the proof on each charge.) The object of the simple and distinct test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other. The very essence of the rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it. *Echols*, [2015-Ohio-5138, at ¶ 16], quoting *State v. Echols*, 128 Ohio App.3d 677, 694, 716 N.E.2d 728 (1st Dist. 1998).

*State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 87 (8th Dist.).

**{¶18}** Patterson argues that he was prejudiced by the state trying all three cases

together. However, he does not demonstrate in what way he was prejudiced. Patterson's argument is without merit because the jury found him not guilty of the alleged offense that took place in 1997. This demonstrates that the evidence presented to the jury was simple and direct. Additionally, the evidence of the joined offenses were uncomplicated, such that the jury was able to segregate the proof required to prove each offense resulting in the defendant not being prejudiced by the joinder. Patterson's second assignment of error is overruled.

## IV. Sufficiency of Evidence

### A. Standard of Review

{¶19} Claiming insufficient evidence,

> [R]aises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Herring*, 8th Dist. Cuyahoga No. 104441, 2017-Ohio-743, ¶ 16.

### B. Law and Analysis

{¶20} In Patterson's third assignment of error, he argues that there was insufficient evidence to support the rape convictions in Counts 9 and 11.

> The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such

evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id*. at ¶ 12. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

*State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 15.

**{¶21}** Patterson was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(c). Count 9 was for the vaginal rape of M.J. while she was substantially impaired by alcohol. Count 11 was for the anal rape of M.J. while she was substantially impaired by alcohol. The statute reads as follows:

> (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

R.C. 2907.02(A)(1)(c).

**{¶22}** M.J. testified that she consumed a large amount of alcohol and described herself as very intoxicated. "The consumption of a large amount of alcohol over the course of just a few hours is sufficient evidence to find that the victim was substantially impaired." *State v. Kuck*, 2d Dist. Darke No. 2015-CA-13, 2016-Ohio-8512, ¶ 95. She remembered getting into the car with a male stranger and waking up in an abandoned home. She testified that she felt as if she had sexual intercourse, but had no memory of the interaction. "Evidence of substantial impairment can also come from a victim's inability to remember the events of the incident due to alcohol consumption." *Id.* at ¶

She decided to go to the hospital where she consented to a collection of a sexual assault kit. The nurse collected samples from M.J.'s vagina and her rectum. The semen collected from M.J.'s body was matched to the DNA of Patterson. M.J. testified that she did not consent to having sexual intercourse with Patterson.

{¶23} Given M.J.'s testimony and the physical evidence linked to Patterson, there was sufficient evidence to support his rape convictions. "Ohio courts have consistently held that a victim's testimony, if believed, is sufficient to support a rape conviction. 'There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.'" *State v. Williams*, 8th Dist. Cuyahoga No. 92714, 2010-Ohio-70, ¶ 32. Therefore, Patterson's third assignment of error is overruled.

## V. Merger and Allied Offenses

### A. Standard of Review

{¶24} "An appellate court applies a de novo standard of review when reviewing whether two offenses are allied offenses of similar import." *State v. Boczek*, 8th Dist. Cuyahoga No. 103811, 2016-Ohio-5708, ¶ 4.

### B. Law and Analysis

{¶25} In Patterson's fourth assignment of error, he contends that the trial court erred when it failed to merge his rape and kidnapping convictions in Counts 1 and 3. R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶26}** When determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25,

[C]ourts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance — in other words, did each offense cause separate, identifiable harm? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? "An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

*Boczek* at ¶ 6.

**{¶27}** First, we must determine that each offense of rape and kidnapping caused a separate, identifiable harm. Patterson committed rape against T.T. when he forcibly engaged in sexual intercourse with her. "The kidnapping statute 'punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant.'" *State v. Price*, 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912, ¶ 28; *State v. Smith*, 9th Dist. Summit Nos. 23468 and 23464, 2007-Ohio-5524, ¶ 41, quoting *State v. Matthieu*, 3d Dist. Mercer Nos. 10-02-04 and 10-02-05, 2003-Ohio-3430, ¶ 17.

{¶28} Patterson kidnapped T.T. when he deceptively offered to give her a ride to L.H.'s home. Patterson traveled from the M & M Lounge at E. 131 Street to L.H.'s home on E. 71 Street. Through Patterson's deception, he lead T.T. to believe that his only purpose was to drive her to L.H.'s home. Patterson then did not allow T.T. to leave his vehicle. T.T. testified that she was unable to exit the vehicle because Patterson choked her and restrained her. After arriving, Patterson then restrained her liberty to commit the rape. The restraining of her liberty to commit the actual rape was separate from Patterson's deception and restraint of T.T. from leaving the vehicle. These acts were separate and identifiable harm.

{¶29} Second, Patterson was not charged with restraining T.T. while raping her. The two types of kidnapping are distinguishable. Deception and restraining T.T. from leaving the vehicle is different from holding T.T. down to penetrate her. The kidnapping occurred before the rape. The rape and the kidnapping were committed separately.

{¶30} Third, both acts were committed with a separate animus and motivation. Patterson deceived and restrained T.T. to prevent her from escaping. However, Patterson raped T.T. for his sexual gratification. Therefore, the rape and kidnapping were not allied offenses and should not merge. Patterson's fourth assignment of error is overruled.

{¶31} Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY